UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK            AJR4016
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:                                          Chapter 11

PLASTIC SOLUTIONS, INC.,                        Case No: 04-81401-478

                    Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**DISCLOSURE STATEMENT FOR
THE PLAN OF REORGANIZATION
<u>PROPOSED BY THE DEBTOR</u>**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR
REJECTION OF THE PLAN. ACCEPTANCES OR
REJECTIONS MAY NOT BE SOLICITED UNTIL A
DISCLOSURE STATEMENT HAS BEEN APPROVED BY
THE BANKRUPTCY COURT. THIS DISCLOSURE
STATEMENT IS BEING SUBMITTED FOR APPROVAL
BUT HAS NOT BEEN APPROVED BY THE COURT.**

      This Disclosure Statement ("Disclosure Statement") is being provided by Plastic Solutions, Inc., the Debtor (the "Debtor"), pursuant to the requirements of Section 1125(b) of Title 11 of the United States Code (the "Bankruptcy Code"), to those known holders of a claim or interest who are entitled to vote on the confirmation of the Plan of Reorganization (the "Plan") proposed by the Debtor in order to disclose adequate information, deemed to be material, important and necessary for the Debtor's creditor (the "Creditors") to make an informed judgment and an informed decision in exercising their right to vote on the Plan.

      Along with this Disclosure Statement, you will receive a copy of the proposed Plan, a Ballot and a Notice fixing a date for a hearing on the confirmation of the Plan. Annexed to this Disclosure Statement or available on line are the following exhibits:

    Exhibit "A":    Debtor's Plan of Reorganization
    Exhibit "B":    Copies of the Schedules of Creditors filed by the Debtor
    Exhibit "C":    Claims Register
    Exhibit "D":    Sales by Month Chart

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan. The date, time and place of the hearing will be found in the "Notice Fixing a Date for a Hearing on Confirmation." which accompanies this notice. The Creditors may vote on the Plan by completing and mailing

the enclosed ballot to the attorneys for the Debtor, the Law Offices of Avrum J. Rosen, 38 New Street, Huntington, New York, 11743. In order for the Plan to be accepted and thereafter confirmed, ("Confirmation"), at least two-thirds (2/3) in amount and more than one-half (½) in number of allowed claims of each class of creditors who vote and who are impaired under the Plan must cast their vote for the acceptance of the Plan. A CREDITOR WHO DOES NOT VOTE FOR THE ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT COUNT IN THE OUTCOME OF THE PLAN'S ACCEPTANCE. Under the proposed Plan. Classes X are impaired.

**THIS DISCLOSURE STATEMENT IS THE ONLY AUTHORIZED STATEMENT WITH RESPECT TO THE PLAN. NO OTHER REPRESENTATIONS CONCERNING THE DEBTOR, ITS OPERATIONS OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTOR. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN YOUR ACCEPTANCE WHICH ARE OTHER THAN OR INCONSISTENT WITH THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION. THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY ORDER OF THE BANKRUPTCY COURT. SUCH APPROVAL BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RECOMMENDATION BY THE COURT AS TO THE PLAN'S MERIT.**

The Debtor and its counsel have prepared the Chapter 11 Plan and submit that this Plan is in the best interest of Creditors generally and recommend acceptance of the Plan by those Creditors who vote. It is the belief of the Debtor that if the Plan is denied confirmation, unsecured creditors will receive less than they will receive under the Plan. This Disclosure Statement has been approved by the Court as containing information of a kind and in sufficient detail that will enable Creditors to make an informed judgment about the Plan, and the Debtor has been authorized to use this Disclosure Statement in connection with the solicitation of ballots on the Plan. At a hearing on Confirmation the Court will consider whether the Plan is feasible, and whether it is in the best interests of the Creditors.

## PART I
## DEFINITIONS

For the purposes of this Disclosure Statement, the terms used herein shall be defined as they are defined in the Debtor's Plan of Reorganization.

## PART II
## PRELIMINARY STATEMENT

On March 9, 2004, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code seeking an order of protection. The Debtor is a Debtor-in-Possession, no committee of unsecured creditors has been appointed, nor has any operating trustee been

appointed.

Prior to the instant Chapter 11 filing, the Debtor previous sought protection under Chapter 11 on February 18, 2000. While the Debtor confirmed its previous Chapter 11 case (Case No. 00-81207), the Debtor was unable to complete its Plan of Reorganization. In accordance with the Plan of Reorganization, the Debtor was successful in repaying its largest secured creditor, Long Island Commercial Bank in the sum of $170,000.00. In addition, the Debtor repaid substantial sums to both the Internal Revenue Service and the New York State Department of Taxation and Finance as well as the New York State Department of Taxation and Labor.

## PART III
## RETENTION OF PROFESSIONALS

On or about March 16, 2004, the Debtor retained the Law Offices of Avrum J. Rosen as counsel to the Debtor. An application for authority to retain the firm as counsel to the Debtor-in-Possession was granted by the Court, with the consent of the Office of the United States Trustee, on March 16, 2004, *nunc pro tunc* to March 9, 2004. On or about April 27, 2004, the Debtor sought an order to retain Resnick and Co., as the Accountant to the Debtor. On June 21, 2004, the Court entered an order authorizing the Debtor's retention of the Accountant. In addition, the Debtor has retained the Law Offices of Richard Wender as special counsel to the Debtor. On August 16, 2004, the Court entered an order authorizing the Debtor's retention of Richard Wender as special counsel. On October 1, 2004, the Debtor sought an order approving the retention of the Law Offices of Richard Kaufman as special counsel to the Debtor. The Court entered an order on October 22, 2004, authorizing the Debtor's retention of Richard Kaufman as special counsel.

## PART IV
## REPRESENTATIONS AND SCOPE OF STATEMENT

The information contained herein has not been subject to a certified audit, and accordingly, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracies. The Debtor believes that the information contained herein is accurate and has verified its accuracy to the extent possible.

## PART V
## DESCRIPTION OF THE DEBTOR AND ITS BUSINESS

The Debtor manufactures made-to-order plastic moldings at is manufacturing plant located at 43 Windsor Place, Central Islip, New York 11722 ("premises"). The Debtor leases the premises pursuant to a written lease dated November 1, 1999, between the Debtor and 43 Windsor Realty, LLC (the "Landlord"). The term of the lease is fifteen (15) years commencing the 1st day of November, 1999 and terminating October 1, 2014. A copy of the lease and the rider

were annexed to the Debtor's motion for an extension of time to assume or reject the lease and is available on the Court's Electronic Docket. The current monthly rent is $4,666.000. The lease has a purchase option for the amount of the outstanding mortgage on the property. That mortgage is in the approximate amount of $300,000.00. The Debtor beleives the Property is worth at least $850,000.00. The Lease and the purchase option are the Debtor's most valuable asset.

## EVENTS DURING THE CHAPTER 11 CASE

The Debtor submitted "First Day" orders permitting the Debtor to pay pre-petition wages. In addition, the Debtor has entered into a consensual cash collateral Stipulation and Order with the Internal Revenue Service. Motions for further time to assume or reject the Debtor's non-residential real property lease have either been granted or agreed to by Stipulation and Order throughout this case.

## APPLICATION TO SET A BAR DATE

The Debtor prepared and filed a motion seeking an order settling the date to file proofs of claim which was signed on May 17, 2004, and which set the last date to file proofs of claim for June 25, 2004. Nineteen claims have been timely filed, although several of the claims of the state and federal taxing authorities appear to be duplicative. A copy of the Claims Register is annexed as Exhibit "C." The Debtor reserves all of its rights to object to any and all of the claims.

The Debtor's operating reports have been filed with the Court and are available for review via the Court's Electronic Docket System, or by request, from the Debtor's Counsel.

## POST-PETITION OPERATIONS

After the filing of the petition, the Debtor reassessed its business strategy. It instituted price increases and sought to broaden its manufacturing base. To that end it entered into negotiations with one of its customers to enter into a joint venture to start a new manufacturing line for injection molding. Special Counsel was retained t o negotiate that agreement. Prior to final documents being executed, the principal of the other company passed away without any warning. That deal is in limbo while the family of the deceased principal decides what to do with the family business. During this time period the Debtor has steadily increased sales. Annexed hereto as Exhibit "D" is a chart showing the sales by month (the names of the Debtor's customers have been redacted). The Debtor has also obtained some large long term contracts for which it has already incurred the up front charges for designing the molds. The Debtor predicts that its sales will continue to grow at least at the current rate.

## PART VI
## DESCRIPTION OF THE PLAN

THIS PART PRESENTS ONLY A SUMMARY OF THE PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR. CREDITORS ARE URGED TO READ THE PLAN IN FULL AND TO CONSULT WITH COUNSEL AS TO ITS CONTENT. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTOR AND ITS CREDITORS.

The Plan classified the claims of Creditors of the Debtors into six (6) categories.

## CLASS I - COSTS OF ADMINISTRATION

Class I consists of the allowed administration claims, including any unpaid post-petition obligations of the Debtor and fees due professionals for services rendered in connection with this case. The Debtor has paid administrative expenses as they have accrued except as set forth below. Upon the distribution date (or upon a determination by the Court that the claims for professional fees are reasonable), each claimant shall be paid in full, in cash, 100% of such claim.

| Claimant | Estimated Claim |
|---|---|
| Law Offices of Avrum J. Rosen | $45,000.00 (less $20,000.00 retainer) |
| Resnick & Co., Inc. | $30,000.00(less interim payments as per court order) |
| The Law Offices of Richard Wender | $ 5,000.00 |
| The Law Offices of Richard Kaufman | $ 2,500.00 |

The amounts set forth above are only approximations. The claims of professionals are subject to the approval of the Court, upon application and notice to Creditors and other parties in interest. The claims of the United States Trustee, pursuant to statute, are also included in this class.

There are 3claims in this class. This Class is not impaired.

## CLASS II - SECURED CLAIMS OF THE INTERNAL REVENUE SERVICE

Class II consists of the allowed secured claim of the Internal Revenue Service ("IRS"). There is one claim in this class in the amount of $ 573,867.00 after crediting post-petition cash collateral payments. The Debtor believes that after considering the value of all of its assets that this claim is only secured in the approximate amount of $200,000.00 which amount shall be applied to the actual taxes due as part of that claim and not the interest and penalties. The Debtor will pay this claim over 10 years at the rate of interest payable on tax obligations, which shall be in effect on the Confirmation Date. The balance of the secured claim shall be treated as a general unsecured claim.

This Class is impaired.

## CLASS III - ALLOWED PRIORITY CLAIMS

Class III consists of the allowed claims entitled to priority under Section 507(a)(7) of the Bankruptcy Code. After payment of claims in classes I and II, claims will be paid 100% of such

claims, over five (5) years from confirmation, with statutory interest. The Priority claims consist of the IRS Claim of $491,576.99 and the Claim of the New York State Department of Labor in the sum of $121,254.42.[1] New York State Department of Taxation and Finance has filed a Secured Claim in the amount of $215,306.42. The Debtor believes that this claim is completely unsecured and should be treated as partially a priority claim and partially unsecured in an amount to be determined by the Court. These claims shall receive a lump sum distribution from the proceeds of the exit financing on the refinancing of the real property upon the execution of the purchase option in the lease. This sum is estimated to be at least $300,000.00. The balance of the priority claims shall be paid in equal monthly payments with statutory interest over six years from Confirmation commencing on the Distribution Date.

This Class is not impaired.


## CLASS IV - ALLOWED SECURED CLAIM OF NISSEI AMERICA, INC.

Class IV consists of the allowed Secured Claim of Nissie America Inc., which has three (3) leases of various pieces of manufacturing equipment used by the Debtor. Consistent with the terms of the Debtor's prior confirmed Plan of Reorganization, the Debtor provided for the treatment of Nissei's claim as a Secured Claim. Nissei has filed a secured claim in this case. Subsequently, the Debtor defaulted on its obligations to Nissei under the Plan, and as a result Nissei filed a demand for arbitration pursuant to the Terms and Conditions of Sale of each of the three separate Purchase Order agreements entered into by Nissei on the one hand, and the Debtor on the other.

In the instant Chapter 11 proceeding, Nissei sought an order from the Court providing relief from the automatic stay, or in the alternative, seeking adequate protection payments. While the Debtor and Nissei reached a consensual resolution obviating the need for the Court to determine Nissei's motion, Nissei made certain representations as to the value of its collateral in its motion. The secured creditor, by the "Declaration of Tomohiko Naito," the President and Chief Executive Officer of Nissei America, represented that the value of each of the three pieces of equipment as follows:

> (1) Nissei Injection Molding Machine Model FS260S71ASE    $33,000.00
> (2) Nissei Injection Molding Machine Model FN1000-12A     $20,300.00
> (3) Nissei Injection Molding Machine Model FS160S36ASE    $25,500.00

The indebtedness to Nissei is partially secured and partially unsecured, based upon the value of the collateral. By Nissie's representations, the value of the collateral is approximately $78.800.00, providing the basis for the amount of Nissei's secured claim. The Debtor has made

---

[1] Note that the Debtor reserves all of its rights to object to this claim.

adequate protection payments in the amount of $11,716.67 which shall be applied to the secured portion of the indebtedness, thereby reducing the secured indebtedness of $67,083.33 less any further adequate protection payments made prior to Confirmation.

The Debtor proposes amortizing the secured indebtedness portion, with interest at the Federal Judgment rate in effect at Confirmation over five (5) years, in equal monthly self amortizing payments. The balance of any indebtedness shall be treated as a general unsecured claim.

This class is impaired.

## CLASS V - ALLOWED UNSECURED CLAIMS

Class V consists of the allowed unsecured claims. There are six (6) claims in this class aggregating $141,317.81 excluding any insider claims and including any penalty claims of the Internal Revenue Service or of any of the New York State Taxing Authorities. These claims shall share in a pro rata distribution of $60,000.00 payable in 20 quarterly distributions.

This Class is impaired.

## CLASS VI - EQUITY SECURITY HOLDERS

Class VI consists of claims of equity security holders. Class VI claimants shall retain their respective interests in the reorganized Debtor in exchange for a New Value Contribution of $25,000.00.

This Class is not impaired.

## MEANS OF EFFECTUATING THE PLAN

The Debtor shall effectuate the Plan through two principal events. The first shall be through the infusion of cash generated as a result of the Debtor's obtaining financing secured by a mortgage on its non-residential real property. The Debtor currently has an option to purchase its non-residential real property from its landlord. The Debtor intends to exercise this option, which requires the Debtor to pay the sum of approximately $300,000.00 to the landlord to exercise its option by paying off the existing mortgage on the Property.. Thereafter, the Debtor intends to obtain a mortgage in the amount of approximately $700,000.00, at a market interest rate, for a term of fifteen (15) years.

Either in the alternative, or in conjunction with the non-residential real property commercial mortgage, the Debtor shall explore the option of IDA Financing. Such financing would provide the Debtor with a substantial cash infusion which would be used to effectuate the

Plan and provide a basis for exit financing.

Further, the Debtor projects that revenues generated by the reorganized Debtor shall reach $1,800,000-$2,200,000.00 per annum, and such additional revenue shall be dedicated to effectuating this Plan.

## TREATMENT OF EXECUTORY CONTRACTS

Except as provided herein, any, and all executory contracts or leases of the Debtor that are not expressly rejected herein, on in the Order confirming the Plan, or by the Order of the Bankruptcy Court prior to the Effective Date or pursuant to a proceeding or motion commenced prior to the Confirmation Date, are hereby assumed pursuant to Section 365 of the Bankruptcy Code. The Debtor is expressly assuming its lease for its non-residential real property and shall cure all monetary defaults upon Confirmation. The Debtor reserves its right to assert that leases for personal property are actually security interests and to negotiate or litigate to final judgment any such defenses.

An entity whose claim arises from rejection of an executory contract or lease shall, to the extent such claim becomes an allowed claim, have the rights of an unsecured creditor with respect thereto. Any entity whose executory contract is rejected shall have thirty (30) days from entry of the Order rejecting said contact to file its claim for lease rejection damages.

## PART VII
## FULL AND FINAL SATISFACTION

As provided in the Plan, all payments, distributions and transfers of cash or property under the Plan are in full and final satisfaction, settlement and release of all claims against the Debtor and the estate of any nature whatsoever existing at the Confirmation Date.

## PART VIII
## METHOD FOR DETERMINATION OF ALLOWED CLAIMS

The Plan provides for payment to be made only to holders of "allowed" claims, in the various classes.[2] As to the claims incurred prior to the filing date, there are three avenues by

---

[2] The term "allowed claims" is defined in the Plan as follows:

1.4 "Allowed Claim" means, (1) any Claim listed on debtor's schedules as filed in connection with its reorganization case which is liquidated in amount and is not designated as contingent or disputed and/or, (2) any Claim against debtor, proof of which was filed on or before the bar date for filing claims against debtor's estate, against which filed claim no objection to the allowance thereof has been or is interposed, or as to any such objection there has been a final Order entered and/or (3) any claim against debtor which is reduced to writing, consented to by debtor and liquidated in amount, which writing has been approved by a final Order."

"Impairment of claims" is defined in the Plan as follows:

1.31 "Impairment of Claims or Interest" - The classes of claims set forth hereafter are described as "impaired" or not "impaired". Impairment is defined in Section 1124 of the Code as follows:

8

which such claims may become "allowed" claims entitled to payment under the Plan. First, if a claim is listed in Debtor's Chapter 11 schedules (as previously filed with the Court and annexed hereto as Exhibit "B" for reference) it is automatically allowed unless those schedules denominate that particular claim as "contingent." unliquidated," or "disputed," or unless an objection thereto is filed with the Court and served upon the claimant. If an objection is interposed, the validity and amount of the claim will be determined by the Bankruptcy Court, following a hearing.

The second method by which a claim may be allowed is by the filing of a "proof of claim" with the Bankruptcy Court. If the claim is not disputed or objected to, it is deemed allowed. Such filing is required in order to assert any claim not included in the schedules, and for any claim denominated therein as "contingent," "unliquidated," or "disputed."

The third manner in which a claim may be determined to be "allowed" is by Order of the Court, after the litigation of a filed objection (or by stipulation settling such litigation setting forth an agreed liquidated claim and which is thereafter "so ordered" by the Court.

## PART IX
## VOTING IMPAIRMENT, CONFIRMATION AND CRAMDOWN

A. Voting:

Claimants with allowed impaired claims are entitled to vote to accept or reject the Plan. A claimant who fails to vote to either accept or reject the Plan will not be included in the calculations regarding the acceptance or rejection of the Plan.

Classes which are not "impaired" under the Plan, pursuant to Section 1126(f) of the

---

Section 1124. Impairment of claims or interests
Except as provided in Section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan - -
(1)    leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder of such claim or interest;
(2)    notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default - -
    (A)    cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;
    (B)    reinstates the maturity of such claim or interest as such maturity existed before such default;
    (C)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
    (D)    does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest; or
(3)    provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to - -
    (A)    with respect to a claim, the allowed amount of such claim; or
    (B)    with respect to an interest, if applicable, the greater of - -
        (I)    any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; or
        (ii)    any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder."

Bankruptcy Code, are presumed to have accepted the Plan.  However, said claimants may rebut this presumption. The proponent believes that the Creditors in Classes II, IV, and V are impaired.

If the Court determines that any class is impaired then a ballot to be completed by the holders of Claims will be enclosed herewith.  Instructions for completing and returning the ballots are set forth thereon and should be reviewed at length.  The Plan will be confirmed by the Bankruptcy Court and made binding upon all claimants if, with respect to all classes of claimants, the Plan is accepted by the holders of two-thirds (2/3) in amount and more than one half (½) in number of allowed claims in each such classes voting upon the plan.

B.  Confirmation Without Acceptance by All Impaired Classes, Cramdown.

Generally, if a Plan is not accepted by all impaired classes, it may nevertheless be confirmed by the Bankruptcy Court if (I) the Plan is accepted by at least one impaired class and it meets all of the other requirements of Section 1129(a) of the Bankruptcy Code; (ii) the Plan does not discriminate unfairly; and (iii) the Plan is fair and equitable to the rejecting classes.  Such a finding would require a determination by the Bankruptcy Court that the Plan meets the requirements of Section 1129(b) of the Bankruptcy Code, including that no holder of any claim or interest junior to the claims of the rejecting class is receiving or retaining any property or payment under the Plan solely on account of such claim or interests.  This requirement is generally referred to as the "absolute priority rule".

The "cramdown" provisions for confirmation of a Plan despite the non-acceptance of one or more impaired classes of the claims or interest are set forth in Section 1129(b) of the Bankruptcy Code.  Section 1129(b)(1) of the Bankruptcy Code states:

> "Notwithstanding section 510(1) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to the Plan, the Court, on request of the proponent of the Plan, shall confirm the Plan notwithstanding the requirements of such paragraph if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan."

The proponent does not represent that the "cramdown" provisions would allow the confirmation of the Debtor"s Plan.  That determination should be made after a review of the information contained herein.

C.  The Confirmation Hearing

The Bankruptcy Court will schedule a Confirmation Hearing.  The Confirmation Hearing will be held before United States Bankruptcy Judge Dorothy T. Eisenberg, at the United States Bankruptcy Court, Eastern District of New York, 290 Federal Plaza, Central Islip, New York.

The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of such adjournment in open Court. At the Confirmation Hearing, or at any adjourned hearing thereof, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of holders of claims and interests. The Bankruptcy Court will also receive and consider a certification of ballots prepared on behalf of the proponent concerning the results of the vote.

## PART X
## POTENTIAL AVOIDANCE AND OTHER SIMILAR CASES

The Debtor will hereafter conduct a review of such books and records, as are available, for the purpose of determining the estate's rights to the recovery of:

(a) fraudulent conveyances pursuant to Section 548 (fraudulent transfers and obligations) and Section 550 (transferee liability), or claims or actions under the Uniform Fraudulent Conveyance Law of New York State, and the other fraudulent conveyance laws extent in the State of New York;

(b) preferential payments, pursuant to Section 547 of the Bankruptcy Code, which includes a payment made (I) within ninety (90) days prior to the filing of the original petition for relief under the Bankruptcy Code (or one year in the case of an insider); (ii) that was for prior obligations of the Debtor, not paid within the time prescribed in the terms usually employed between the Debtor and the Creditor receiving the payment; (iii) made while the Debtor was insolvent; (iv) which allowed the Creditor to receive more than it would have in a liquidation of the Debtor's estate;

(c) insider preferential payments, pursuant to Section 547 of the Bankruptcy Code, which includes a preferential payment made by an "insider" within one (1) year prior to the filing of the Petition, instead of ninety (90) days as in the case of all others[3].

## PART XI
## DISCUSSION OF COMPARATIVE RECOVERIES

To determine what might be recovered by an unsecured creditor, in a hypothetical Chapter 7 liquidation case, the following steps should be taken:

---

3 The term "insider" is defined in Section 101(31) of the Bankruptcy Code as follows:

"(31) `insider' includes - -
    (B) if the debtor is a corporation - -
        (I)    director of the debtor
        (ii)   officer of the debtor
        (iii)  person in control of the debtor, ..."

(1) determine the dollar amount that would be generated from the liquidation by forced sale of the Debtor's assets by a Chapter 7 trustee; and

(2) subtract the balance due the secured creditors, the estimated costs of the liquidation (including the Chapter 7 trustee's fees and the fees of professionals employed by the Chapter 7 trustee), the unpaid expenses of the reorganization proceeding and other bankruptcy priority obligations (such as priority wages, union and tax obligations).

These any other claims arising in the liquidation, or from the current reorganization proceedings must be paid in full before any funds would be made available to pay unsecured creditors. The value of the distribution resulting from a liquidation (after subtracting the amounts described above) may then be compared with a recovery estimated to be forthcoming under the proposed Plan.

The Debtor has prepared the following liquidation analysis based upon the market value of its equipment and the ability to sell other tangible and intangible assets.

| | |
|---|---|
| Value of various pieces of manufacturing equipment, | $287,000.00 |
| Value of Lease Option | $350,000.00 |
| Cure on Non-Residential Real Property Lease | $ 13,998.00 |
| Administrative Expenses | $120,000.00 |

Because of the substantial secured and priority claims that take priority over unsecured claims, even before any Chapter 7 administrative costs are deducted from the total amount, there would be no distribution to general unsecured creditors in a hypothetical liquidation.

## PART XII
## TAX CONSEQUENCES

Other than the satisfaction of those claims of taxing authorities addressed herein, the Debtor is not aware of any tax consequences that may result from the confirmation of this Plan. Creditors are instructed to consult their own tax advisors.

## PART XIII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of Debtor's case pursuant to and for the purposes set forth in 1127(b) of the Bankruptcy Code and, inter alia, for the following purposes:

(I) To determine any and all objections to the allowance of claims or interests;

(ii) To determine any and all applications for compensation and reimbursement of

expenses for professional fees and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

(iii) To amend or modify the Plan to remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or advisable to carry out the purposes and intent of the Plan to the extent authorized by the Bankruptcy Code or the Bankruptcy Rules;

(iv) To determine any and all controversies and disputes arising under or related to the Plan;

(v) To construe and enforce any and all provisions of the Plan;

(vi) To determine any and all applications, motions, adversary proceedings and contested or litigated matters brought before the Bankruptcy Court concerning the administration of the estate, or its property;

(vii) To determine any and all controversies and disputes arising under or related to any settlement of an adversary proceeding or contested matter approved by the Bankruptcy Court, either before or after the Confirmation date.

(viii) To hear and determine adversary proceedings seeking the avoidance or recovery of preferential payments and/or fraudulent conveyances or seeking the recovery of money, assets or property of the estate;

(ix) To enter a final Order or decree in the Debtor's Chapter 11 case.

## PART XIV
## FINANCIAL INFORMATION

The Debtor has filed with the Bankruptcy Court monthly operating reports. This financial information has not been included in this Disclosure Statement, but may be examined in the office of the Clerk of the Bankruptcy Court, One Bowling Green, New York, New York, during normal business hours, or are available on line at the Court's Web Site through PACER.

## CONCLUSION

No representations concerning Debtor or the Plan are authorized other than as set forth in this Disclosure Statement. Any representation or inducements made to secure acceptances, other than those contained in this Statement, should not be relied upon by any claimants in arriving at their decision as to whether to accept or reject the Plan. The information contained in this Disclosure Statement has not been subject to a certified audit. Debtor is unable to warrant that the information contained herein is without any inaccuracy, although great effort has been made

to insure that the information set forth in this Disclosure Statement is true and accurate.

Dated: New York, New York
November 30, 2004

        Plastic Solutions, Inc.

By:    S/Avi Ben Bassat
        Avi Ben Bassat


Law Offices of Avrum J. Rosen

By:    s/Avrum J. Rosen
        Avrum J. Rosen (AJR4016)
        38 New Street
        Huntington, NY 11743
        (631) 423-8527
        AJRLAW@aol.com